UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 1:09-CR-172 |
|     Plaintiff, | |
| vs. | |
| Daryl Haynor and Jon Flask, | |
|     Defendants. | |

**ORDER**

In accord with the scheduling order, the parties filed several pretrial motions on September 18, 2012. These are Defendant Haynor's motion for discovery (Doc. 157); his second motion for a bill of particulars (Doc. 159); Defendant Flask's renewed motion for a bill of particulars (Doc. 160); Flask's motion for release of certain Brady material (Doc. 161); Flask's two motions seeking exclusion of certain evidence regarding SLOTS (Docs. 162 and 163); and the Government's motion to exclude Haynor's expert witness (Doc. 158). Responses to each of these motions have been filed.

1.     Defendants' Requests for Jencks Materials.

Both Defendants filed motions seeking an order requiring the Government to immediately produce all Brady and Jencks materials. Haynor's request is included in his discovery motion (Doc. 157). In addition to Brady/Jencks materials, Flask's motion (Doc. 154) seeks the production of interview statements, notes and all related materials that the Government had previously produced under seal to Haynor, in connection with the proceedings on Haynor's motion to dismiss. (Flask was not given access to those

materials by the terms of the protective order entered on August 3, 2011.)  Flask alternatively seeks a severance of his trial from Haynor's, contending that without the ability to freely and fully consult with Haynor's counsel on these issues, a joint trial would violate his Sixth Amendment rights.

The Government's consent response (Doc. 169) states that it has agreed to produce Jencks materials to both Defendants on a rolling basis, beginning November 1 and continuing to November 21, 2012, reserving its right to produce additional materials beyond that date if need should arise.  The Government also agreed to amend the protective order previously entered in this case, to allow Haynor's counsel to freely share information with Flask's counsel to prepare for trial.  (See Doc. 172, Order granting motion to amend the protective order.)  The Government reiterates its position that the materials previously disclosed cannot be used at trial, and will object to any such offer.

As it appears that the parties have reached an agreement with regard to the production of Jencks materials, and which resolves Flask's concerns about a joint trial, these issues are moot.

2.  Bill of Particulars

Both Defendants have filed renewed motions seeking a bill of particulars.  (Docs. 159, 160)  Haynor's motion argues that the indictment's allegations are "vague and indefinite with respect to the universe of tax returns and taxpayers at issue."  He contends that the indictment does not specifically identify what tax returns are at issue, as the indictment alleges that he was involved in marketing a SLOTS transaction to "various" or "at least six corporations."  While many of the allegations relate specifically

to Corporations A through D (whose identities are known), he seeks particulars regarding any other corporations whose returns are at issue. He also contends that it is unclear whether any returns filed by TransCapital or any of the "Single Purpose Entities" may also be at issue. Haynor cites several cases that involved allegations of tax evasion or filing false returns, in which the courts have noted that the complexity of tax laws counsel in favor of a liberal approach to requests for a bill of particulars. See, e.g., United States v. Earnhart, 683 F.Supp. 717 (W.D. Ark. 1987), granting motion for additional particulars about the specific deductions that the government intended to prove were fraudulent. See also, United States v. Rosenfeld, 264 F.Supp. 760 (N.D. Ill. 1967), where the court ordered the government to provide particulars on the basic entries on the returns the government alleged to be false, and a list of any deductions the government intended to show were false.

The Government responds (see Doc. 170 at 5-9) that it has already identified the SLOTS clients, and they also were identified in connection with Michael Parker's guilty plea. The indictment clearly puts the Single Purpose Entities' returns at issue, because the alleged scheme was to conceal the fact that those entities resold the leasehold interests at a loss, thus avoiding reporting the income from the first sale. It seems evident to the Court that those returns would be relevant with respect to how the Single Purpose Entities treated the transaction. The Government also suggests that the actual tax returns of the SLOTS clients are not really critical to the case, because the amounts of the deductions claimed on those returns based on the client's participation in a SLOTS transaction are not in dispute. It further suggests that the amount of the SLOTS clients' loss deduction could be stipulated to, rendering the returns themselves

essentially irrelevant. Moreover, the Government notes that the returns of companies that never finalized a SLOTS transaction are not at issue and are not relevant, although the Government intends to present evidence about Defendants' activities regarding the promotion and marketing of SLOTS to those companies.

The Court finds that the indictment provides sufficient notice of the "universe" of tax returns that are at issue in this case: namely, the SLOTS' clients whose returns were audited and deductions disallowed (Corporations A through D); four other companies for whom Paragraph 9 of the indictment alleges the Defendants "implemented" a SLOTS transaction; and the Single Purpose Entities that were involved in the completed SLOTS transactions. Entities that did not complete a SLOTS transaction obviously could not claim any deductions stemming from a SLOTS transaction, and those entities' returns are irrelevant.

Flask's separate motion for a bill of particulars (Doc. 160) notes that in his first motion, he sought additional particulars about the false, fraudulent and misleading statements he allegedly made or "caused to be made" to the IRS about SLOTS; where and when these statements were made or "caused to be made," and who made them. (See Doc. 20) The Government responded by confirming that the information would be provided in discovery. The Government specifically noted that Michael Parker's testimony would support the allegation that Flask "caused" false statements to be made to the IRS, and that other evidence would relate to Flask's role in "causing the various TransCapital affiliates to send out Early Buy-Out correspondence." (Doc. 27 at 7) This Court denied Flask's motion subject to renewal if the Government's discovery did not illuminate the indictment's allegations.

Flask now asserts that he has searched the voluminous discovery materials produced but cannot determine how he made or "caused to be made" the false statements to the IRS alleged in paragraphs 29 through 31 of the indictment. His counsel wrote the Government in August 2011, asking for the identification of specific documents relating to these allegations, and pointing out that there was no evidence that Flask personally made those statements. Counsel asked the Government to identify documents that would show what Flask purportedly did to "cause" the statements to be made to the IRS, noting that Flask was retired on the dates alleged in paragraphs 29-31 of the indictment.

The Government responds that the indictment alleges specific details about the scheme allegedly engaged in by Flask, using language that clearly tracks the statutes that Flask is charged under (18 U.S.C. §371 and 26 U.S.C. §7212(a)). The indictment alleges the dates of specific conference calls, detailed in paragraph 26, between the Defendants and Michael Parker during which the Government alleges both Defendants prepared Parker to make the false statements at the identified IRS audit conferences. The Government further responds that the participants at the meetings alleged in the indictment are disclosed in the discovery materials. It also notes that additional specific information about the conference calls and meetings detailed in the indictment will be included in the Jencks/Giglio information that the Government has agreed to produce beginning on November 1.

In denying the Defendants' first motion for a bill of particulars, this Court noted that Paragraphs 26(m) through 26(q) of the indictment alleged that Flask and Michael Parker "caused" a Single Purpose Entity to send correspondence and documents to

three different SLOTS clients on certain dates relating to the clients' Early Buy-Out options.  The correspondence and documents have presumably been produced by the Government, as Flask's pending motion does not take issue with those allegations. With respect to the three IRS audit conferences alleged in paragraphs 29, 30 and 31, Flask claims that he was retired on those dates, and that no discovery has shown that Flask actually made any of these statements.  But as the Government notes, a defendant can be liable for conduct that "causes" statements to be made by others; the conspiracy statute under which Defendants are charged plainly provides that if two or more individuals conspire to defraud the United states, "... and one or more of such persons do any act to effect the object of the conspiracy,..." each co-conspirator is liable.  Flask could be liable for statements made at the audit conferences even if he was not physically present.

Flask again relies on United States v. Hsia, 24 F.Supp.2d 14 (D.D.C. 1998), cited in Defendants' first motion for particulars, where the district court ordered the Government to provide a bill of particulars describing how Hsia "caused" certain false statements in reports filed with the Federal Election Commission by various political committees, statements that allegedly concealed the identity of the true source of contributions reported by those committees.  Two of the counts alleged that the actual contributor was a tax-exempt religious organization for whom Hsia had provided legal representation on immigration matters.  The indictment generally alleged that she conspired with that organization and others to impede the duties of both the FEC and of the Immigration and Naturalization Service.  The court noted that the statements of the political committees had been provided to Hsia, but that the government had not

provided "a coherent explanation" of how Hsia "caused" the unrelated political committees to make those statements to the FEC. For that reason, the district court ordered a bill of particulars on that issue.

In another prosecution arising from similar allegations of false statements in FEC reports, the court granted a bill of particulars requiring the government to identify the specific false statements that it alleged the defendant made or willfully caused to be made. The Government had provided excerpts of the FEC reports by various political committees that identified 175 individual contributors, and argued that the defendant could sort out which of the contributors and which of their statements he was responsible for. The district court rejected that contention, noting that "[a] defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information." United States v. Trie, 21 F.Supp.2d 7, 21 (D.D.C. 1998).

Here, the indictment alleges that Flask was the attorney for TransCapital, and that he worked with Haynor and others at TransCapital to market and implement SLOTS transactions. Paragraph 6 alleges that Parker was TransCapital's Chief Operating Officer, and worked with both Defendants to market and implement SLOTS, including TransCapital's formation of the various Special Purpose Entities. The factual relationships between the parties are clearly described, unlike the situation in Hsia, where the evidence disclosed no direct relationship between Hsia and the various political committees. Paragraphs 29 through 31 of the indictment identify the dates the

allegedly false statements were made, where they were made (during the audit conferences), and what those statements were: that the Single Purpose Entities involved in the SLOTS transactions alleged in those paragraphs retained their ownership of the leasehold interests (¶¶29 and 31), or in the case of Corporation C, had entered into SLOTS with the expectation of owning those interests indefinitely (¶30), when in reality the SPE's had sold the leasehold interests in order to generate tax losses. The indictment alleges that those 'second sales" had been planned from the outset by the Defendants, yet the contrary statements to the IRS were made with the intent to mislead the IRS.

As this Court previously held, the purpose of a bill of particulars is to remedy vague language used in an indictment, "to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." United States v. Crayton, 357 F.3d 560, 568 (6th Cir. 2004), quoting United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993). A bill of particulars is not proper to compel disclosure of all of the Government's evidence or its trial strategies. The Court must conclude that the indictment, now augmented by discovery and the Government's impending Jencks/Giglio and Rule 404(b) disclosures, is sufficient to apprise the Defendants of the nature and basis of the charges, and to preclude a second prosecution against them for the same offenses. The motions for a bill of particulars are therefore denied.

3. Discovery Motions

Haynor filed a motion seeking additional discovery materials (Doc. 157), and Flask filed a motion seeking production of specific Brady material. (Doc. 161) Haynor

seeks the production in advance of trial of any Rule 404(b) evidence the Government intends to use; the identity of all unindicted co-conspirators whose statements will be offered against him; Brady/Giglio and Bruton materials; and Jencks materials concerning any government witness.  Flask seeks much of the same information, and also seeks production of personnel files for any witness employed by the Government during the period of the alleged conspiracy; co-conspirator statements if the Government does not intend to call the individuals as witnesses; all documents reflecting Flask's purported attendance at the IRS meetings and his participation in conference calls identified in the indictment; all information reflecting mental health problems or narcotic and alcohol misuse by any Government witness; and all scientific and technical reports, such as handwriting examinations or pertaining to voice recordings, that the Government intends to use.

The Government's consolidated response (Doc. 170) notes that it has agreed to produce Jencks, Giglio, and Rule 404(b) materials, which will be produced beginning November 1.  It has also agreed to identify any co-conspirators and produce their statements (including for those not called as witnesses) by November 21.  The Government asserts that it is presently unaware of any Bruton material with respect to either of the Defendants.  If it should discover any such material, the Court assumes it will be produced.  The Government has no mental health or medical records about Michael Parker or any other prosecution witness.  It also notes that Flask is as able as the Government would be to obtain those confidential records by seeking a court order, and that it has no duty to investigate this sort of background information on its witnesses.  And it has agreed to produce any scientific reports obtained by the

prosecution team. The Government argues that some of the materials Flask seeks are exempt from discovery under Rule 16(a)(2) as internal government documents. As far as the Court can discern, this may apply to the personnel files of government employee-witnesses.

As a general matter, the Government acknowledges its obligations to produce Brady material that is in its possession, or that it discovers in its possession prior to trial. Most of Defendants' other requests appear to be satisfied by the Government's agreement to produce materials pre-trial on a rolling basis beginning November 1. Concerning Flask's motion with respect to specific documents about the three IRS meetings and three conference calls, he seeks production of all documents and statements reflecting, inter alia, that witnesses do not remember or do not know if Flask attended the meetings, what statements he purportedly made, and the names of persons "who handwrote Defendant Flask's name on certain agendas for the meetings, and their basis for doing so." (Doc. 161 at 3) The Government states it has already produced all responsive materials, and that the Jencks/Giglio materials will contain facts and statements that may be relevant to Flask's concerns, especially with regard to Mr. Parker. The Court will not order the Government to produce material it has already produced, or to explain how it intends to present its theories regarding these meetings and the statements that were allegedly made to the IRS.

With regard to the request for personnel files on witnesses employed by the Government, the Court will not order their production as they will obviously contain information that is private and confidential, and not subject to disclosure. In another recent criminal case, the Court agreed to review government-employed witness

personnel files in camera in order to determine if any relevant impeachment information was contained in the files. The Court is willing to do so in this case, but will first entertain any comments or objections from either party to this proposal.

For these reasons, the Court concludes that the discovery motions are moot in part, and are denied in part. The governmental witness personnel files issue will be addressed at the final pre-trial conference.

4.   Flask has filed a motion in limine seeking an order precluding the Government from introducing evidence to challenge "the legitimacy and technical merits" of the SLOTS transactions. (Doc. 162) The motion also seeks to prohibit the use of derogatory and negative references to the SLOTS transactions (such as referring to SLOTS as a "sham" transaction, a phrase that was repeatedly used in Michael Parker's plea agreement and statement of facts). Flask recites the Government's numerous statements to this Court that it does not intend to argue or prove that the SLOTS transaction itself is illegal. Rather, the Government has stated that the charges against the Defendants are based on the indictment's allegations of "misrepresentations" and "concealment" from the IRS. He notes that Mr. Sullivan has stated to the Court that the "merits" of the SLOTS transaction are not relevant to the criminal charges, and that the indictment has nothing to do with whether SLOTS "works" as a tax-related transaction. Flask has not retained an expert witness to address the merits and legitimacy of the SLOTS transaction, relying on the Government's previous representations to the Court.

The Government's response confirms its previous representations that its case will not challenge the merits of SLOTS, and that issue is not for the jury to determine. The issue, according to the Government, is whether Flask and Haynor conspired to

-11-

conceal the fact of the SPE's "second sales" from the IRS, and whether they made (or "caused to be made") false statements to the IRS during the SLOTS clients' audit meetings. But with respect to the alleged falsity of those statements, the Government contends that the "merits" of the SLOTS structure are relevant to prove intent and Defendants' state of mind. For example, the Government intends to use the Field Service Advice published by the IRS in April 2002, in which the IRS concluded that a SLOTS transaction (for Corporation A) "lacked economic substance" for federal tax purposes. That FSA particularly questioned the legitimacy of the "second sale" in that case from the original buyer to the successor entity. The Government argues that it intends to prove that both of the Defendants were aware of the FSA and of other instances in which the IRS questioned the legitimacy of SLOTS as a tax strategy when the allegedly false statements were made. It argues that this type of evidence about the "merits" is highly relevant to show Defendants' knowledge that the existence of a second sale in any future SLOTS transaction would not be favorably considered by the IRS, especially if the entire purpose of that sale was to offset the original buyer's recognition of income from the sale/leaseback transaction.

It seems plain to the Court that in order to demonstrate how the statements allegedly made by the Defendants were false, the jury will have to have some understanding of the basic structure of the SLOTS transaction. The indictment alleges that the SLOTS client sold the leasehold interest to the Single Purpose Entity and leased it back, generating a tax deduction. It further alleges that the Single Purpose Entity sold the rights to the lease payments, generating income that it was required to report. Defendants are accused of designing a plan to eliminate that liability through the

-12-

"second sale" of the leasehold interests.  This sort of sophisticated transaction is not something that most jurors will be familiar with, and evidence about the structure of the transaction would be relevant in order to determine whether the Government's allegations against the Defendants have been proved beyond a reasonable doubt.  The Court cannot grant Flask's motion to exclude all of this evidence before trial, as admissibility decisions will have to be made individually.

However, the Court does share Flask's concern that witnesses and documents stating that SLOTS was a "sham" transaction, suffered from "fatal flaws," or using other similar derogatory terms, could cause unfair prejudice to both Defendants from the outset of the trial.  The Court cannot fashion an appropriate order to address this concern at this juncture, but the Court intends to discuss this issue with counsel during the final pretrial conference, and will grant appropriate relief.

5. Flask filed a motion in limine to exclude any evidence concerning non-SLOTS transactions, and to those SLOTS transactions that were not consummated.  (Doc. 163) Flask notes in particular some of the Government's discovery materials about negotiations with the Citizen Potawatomi Nation concerning a prospective SLOTS transaction that did not close.  Flask contends that this evidence is inadmissible under Rule 404(b), because the evidence is not material to the charges with respect to the specific SLOTS transactions alleged in the indictment.  He further argues that the evidence is inadmissible under Rule 403, as it would unfairly prejudice his defense and mislead the jury.

The Government responds that evidence concerning SLOTS transactions that did not come to fruition, particularly the evidence about the negotiations with the Indian

tribe, is intrinsic evidence that is intertwined with its evidence about the specific SLOTS transactions alleged in the indictment.  The Government argues that the evidence Flask cites, that relates to the Morgan Stanley SLOTS transaction that did not close, is additional evidence of Defendants' marketing of SLOTS and is very relevant to the critical issue underlying the charges, Defendants' knowledge of the SPE's need to shelter the income that was generated by the sale of the leasehold interest rent stream.

As noted above, the Government has agreed to provide notice to both Defendants of any Rule 404(b) evidence it intends to use at trial.  Specific objections to specifically identified material may be raised after that evidence is identified or offered at trial.  The Court will not grant a blanket order at this point precluding the Government from seeking to introduce all evidence regarding the nature and structure of SLOTS transactions, and Defendants' conduct in designing and marketing transactions that did not close, including evidence cited by Flask concerning the Morgan Stanley transaction and the Potawatomi Indian tribe.  It is not clear what evidence regarding "non-SLOTS" transactions may be of concern, and any such objections may be raised to specific items of proffered evidence.  Flask's Rule 403 objections are reserved for trial and may be raised with regard to specific testimony or documents.

6.  The Government filed a motion in limine seeking to preclude testimony from Haynor's identified tax expert, Kenneth J. Kies.  (Doc. 158)  The Government does not challenge Mr. Kies qualifications and expertise, but argues that his opinions regarding the tax validity of SLOTS transactions or whether Haynor concealed certain facts from the SLOTS clients are irrelevant to the issues in contention.  Haynor disagrees (Doc. 171), arguing that Kies' proposed testimony is relevant and will assist the jury in

understanding the technical aspects of SLOTS transactions, and in evaluating the Government's allegations of criminal intent.  Mr. Kies' report (Doc. 152, Exhibit 1) includes his opinions concerning the legitimacy of statements in KPMG's opinion letters (which the indictment alleges contains false statements); legitimate business purposes underlying sale/leaseback arrangements generally and SLOTS specifically; and various aspects of the transactions that suggest they were valid and had economic substance.  Mr. Kies also notes provisions in three of the SLOTS' master leases that he contends specifically disclosed the information that the Government alleges Haynor concealed from those SLOTS clients.  His experience and qualifications are not in dispute, and his knowledge of sale-leaseback transactions is extensive.

The Government argues that the merits of SLOTS are not an issue for the jury.  But as discussed above, it is clear that the Government intends to introduce a significant amount of evidence addressing how the SLOTS transactions were designed and marketed to clients.  Some of the evidence suggests that SLOTS was viewed as a sham transaction and lacking in any economic substance.  The Court will not preclude Mr. Kies from testifying at trial at this juncture, as the Government has not presented its case-in-chief.  This Court cannot determine at this point if Mr. Kies' anticipated testimony is completely irrelevant and inadmissible under Rule 702, as the Government's motion argues.  While an expert is prohibited from testifying about the ultimate issue of Defendant's intent to engage in the conspiracy or to make false statements to the IRS, pursuant to Fed. R. Civ. Proc. 704(b), Mr. Kies' testimony and opinions set forth in his report may very well assist the trier of fact to understand the nature and scope of a SLOTS transaction, which in turn will assist the jury in

understanding the evidence presented, or to determine a fact in dispute. The Government's motion is therefore denied without prejudice to renewal at trial.

SO ORDERED.

DATED: October 29, 2012     s/Sandra S. Beckwith
                                            Sandra S. Beckwith
                                            Senior United States District Judge